IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FT. MYERS ALF, INC, | ) | Case No. 20-08952 |
| | ) | |
| Debtor. | ) | Honorable Donald R. Cassling |
| | ) | |
| | ) | Courtroom 642 |


**DEBTOR'S AMENDED PLAN OF REORGANIZATION
FOR SMALL BUSINESS UNDER CHAPTER 11**


Paul M. Bauch (ARDC #6196619)
Carolina Y. Sales (ARDC #6287277)
BAUCH & MICHAELS, LLC
53 W. Jackson Boulevard, Suite 1115
Chicago, Illinois 60604
Tel.: (312) 588-5000
Fax: (312) 427-5709
pbauch@bauch-michaels.com
Attorneys for Debtor-in-Possession

Dated: October 4, 2020

# TABLE OF CONTENTS

BACKGROUND……………………………………………………............... 1

SUMMARY OF PLAN…………………………………………………............ 2

ARTICLE I - DEFINITIONS AND INTERPRETATION ............................... 3

    A.    Definitions ...................................................................... 3

    B.    Interpretation; Application of Definitions and Rules of Construction   9

ARTICLE II - PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES
AND PRIORITY TAX CLAIMS .......................................................... 10

    *2.1*    *Administrative Expenses* .............................................. 10

    *2.2*    *Professional Compensation and Reimbursement Claims*…………………………….......................................... 10

    *2.3*    *Priority Tax Claims* .................................................... 10

ARTICLE III - CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS
IMPAIRMENT AND VOTING................................................................ 11

ARTICLE IV - PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY
INTERESTS ...................................................................................... 11

    *4.1*    *Priority Non-Tax Claims (Class 1)* ............................... 11

    *4.2*    *Real Estate Tax Secured Claims-Emerald (Class 2)* .................. 12

    *4.3*    *Real Estate Tax Secured Claims-Canal (Class 3)* ...................... 12

    *4.4*    *Real Estate Tax Secured Claim-Lee County (Class 4)* ............... 12

    *4.5*    *City of Ft. Myers Secured Claim (Class 5)* .................................. 12

    *4.6*    *Forum Architecture Secured Claim (Class 6)* ............................ 12

    *4.7*    *General Unsecured Claims (Class 7)* ........................................ 12

    *4.8*    *General Unsecured Claims-Kameli (Class 8)* ............................ 12

    *4.9*    *General Unsecured Claims-EB-5 Fund (Class 9)*........................ 13

    *4.10*    *Membership Equity Interests (Class 10)*...................................... 13

    *4.11*    *Confirmation* ................................................................ 13

ARTICLE V - MEANS OF IMPLEMENTATION ........................................... 14

    *5.1*    *Kameli Plan Exit Credit Facility* ................................ 14

*5.2*    *Marketing and Sale of Property* ...................................................    14

*5.3*    *Legal Forms and Governance* ......................................................    15

*5.4*    *Exemption from Transfer Taxes* ..................................................    15

*5.5*    *Expedited Tax Determination* .....................................................    15

ARTICLE VI - PROVISIONS GOVERNING DISTRIBUTIONS ...................    15

*6.1*    *Date of Distributions* .................................................................    15

*6.2*    *Distributions Concerning Disputed Secured Claims* ...................    16

*6.3*    *Distributions Concerning Disputed General Unsecured Claims*........    16

*6.4*    *Disbursing Agent* ......................................................................    17

*6.5*    *Rights and Powers of Disbursing Agent* ....................................    17

*6.6*    *Delivery of Distributions* ............................................................    17

*6.7*    *Manner of Payment* ..................................................................    18

*6.8*    *Setoffs and Recoupment* ...........................................................    18

*6.9*    *Allocation of Plan Distributions Between Principal and Interest*    18

*6.10*   *Withholding and Reporting Requirements* .................................    18

ARTICLE VII - PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER
PLAN OF REORGANIZATION .........................................................    19

*7.1*    *Objections* .................................................................................    19

*7.2*    *No Distributions Pending Allowance* .........................................    19

*7.3*    *Distributions After Allowance* ...................................................    19

ARTICLE VIII - EXECUTORY CONTRACTS AND UNEXPIRED LEASES    20

*8.1*    *Treatment* ..................................................................................    20

*8.2*    *Lease Agreements* ......................................................................    20

*8.3*    *Cure Payments* ..........................................................................    20

*8.4*    *Rejection Damages Claims* .........................................................    21

ARTICLE IX - CONDITIONS PRECEDENT TO CONSUMMATION DATE    21

*9.1*    *Conditions Precedent to Confirmation* ......................................    21

*9.2*    *Conditions Precedent to Effectiveness* ........................................    21

*9.3*    *Waiver of Conditions* .................................................................    21

*9.4*    *Satisfaction or Failure of Conditions* .........................................    22

ARTICLE X - EFFECT OF CONFIRMATION ...............................................    22

*10.1*   *Binding Effect* ............................................................................    22

*10.2*  *Discharge of Debtor*  ......................................................................  22

*10.3*  *Term of Injunctions or Stays*  ........................................................  22

*10.4*  *Indemnification Obligations*  .........................................................  23

*10.5*  *Retained Causes of Action*  ............................................................  23

ARTICLE XI - RETENTION OF JURISDICTION  .........................................  23

ARTICLE XII - MISCELLANEOUS PROVISIONS  .........................................  24

*12.1*  *Payment of Statutory Fees*  ............................................................  25

*12.2*  *Modification of Plan*  .....................................................................  25

*12.3*  *Withdrawal of Plan*  ......................................................................  25

*12.4*  *Severability of Plan Provisions*  ....................................................  25

*12.5*  *Governing Law*  .............................................................................  25

*12.6*  *Compliance with Tax Requirements*  ............................................  26

*12.7*  *Computation of Time*  ....................................................................  26

*12.8*  *Notices*  .........................................................................................  26

*12.9*  *Filing or Execution of Additional Documents*  .............................  26

# PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Ft Myers ALF, Inc. ( "Ft. Myers" or the "Debtor"), as the debtor and debtor in possession, hereby proposes the following chapter 11 plan of reorganization for small business debtor, pursuant to section 1189 of the Bankruptcy Code:

## BACKGROUND

A.  Description and History of Debtor's Business

The Debtor is a Florida corporation that was organized to purchase a parcel of real property located at 4999 Winkler Avenue, Fort Myers, Florida 33966 (vacant land in Ft Myers, Florida) ("the "Property") and construct and operate an assisted living facility on the Property. The Debtor was part of a group of entities organized and overseen by Taher Kameli, an immigration attorney, that offered certain "foreign investor" immigrants EB-5 visa program investments. In 2014, the Debtor acquired the Property with a loan provided by Ft Myers EB-5 Fund, LLC, the Debtor's largest creditor. The Debtor proceeded in good faith with the development of an assisted living facility ("ALF") on the Property, including contracting for feasibility and market studies, architectural plans and engineering studies, and other professional services required to proceed with the construction of the ALF improvements. Notwithstanding the foregoing, the Debtor was unable to raise the sufficient capital to proceed with the development.

The Debtor's architects filed a mechanic's lien and an action to enforce the same. On March 6, 2020, the court in the mechanic's lien action entered judgment based on a mediation agreement, and the Property was scheduled for a foreclosure sale on April 8, 2020. In October of 2020, the Debtor had received an offer to purchase the Property for $1.9 million but declined to enter into a contract for sale because of concerns regarding the buyer's financial ability. In July of 2020, the Debtor obtained a broker's opinion of value ("BOV") that the Property had a fair market value in excess of $3 million. The Debtor is offering the Property for sale and expects to conclude a transaction within six months of the Effective Date of the Plan. The Debtor may continue to pursue alternative reorganization strategies, which may include a refinancing of the Property. In either case, all secured claims will be paid in full, and unsecured claims should receive a substantial dividend.

B.  Liquidation Analysis

The Property has an estimated liquidation value of $1.5 to $3 million. The total secured claims at the time of sale are estimated to be approximately $420,000. The total administrative and priority claims are estimated at $100,000. The total unsecured claims are estimated at $2 million. A sale in the mid-range of the October 2019 offer and the July 2020 BOV, or $2.5 million, will pay all administrative,

priority, and secured creditors in full and will likely return an 80-90% dividend to unsecured creditors.

The Debtor estimates that a sale by a Chapter 7 trustee is likely to net at the lower end of the value range, or approximately $1.5 million. Chapter 7 trustee expenses relating to the disposition are estimated at approximately $150,000. In a Chapter 7 liquidation, unsecured creditors are estimated to receive a dividend of 30-40% of their claims. In addition, Kameli has agreed to subordinate his and his affiliates' claims of approximately $160,000 to those of the EB-5 Fund and other non-insider unsecured creditors under the Plan. This subordination would not occur in a Chapter 7 liquidation. Thus, the dividend that would otherwise be paid to Kameli and his affiliates under the Plan is being paid to the EB-5 Fund and other non-insider unsecured creditors.

The major determinate in recoveries is the ultimate Net Sale Proceeds. This is a variable that is controlled by the market. The negative variable is the Chapter 7 trustee's commission and fees and expenses of the trustee's counsel and other advisors and the loss of the voluntary subordination.

C. Ability to make future plan payments and operate without further reorganization

The Debtor's only asset does not generate income, but its holding cost is nominal: approximately $20,000 annually for real estate taxes and maintenance. The Debtor has a loan commitment from the principal of its shareholder, Taher Kameli, to advance it up to $30,000 annually to pay real estate taxes and maintenance on the Property until such time as the Property is sold and the secured claims are paid in full.

The Property has substantial equity that is likely to be maximized by a normal marketing and sale process that avoids a "fire sale" atmosphere. The current Property value estimates of $1.5 to $3 million provide adequate protection to the secured creditors and will generate a substantial dividend to unsecured creditors.

SUMMARY OF PLAN

The Plan provides for the marketing and sale of the Debtor's assets, primarily the Property. The Plan contemplates that the Debtor will borrow funds to pay real estate taxes and other carrying costs, estimated at $20,000 annually, through the Kameli exit loan. The Classes of secured creditors will retain their liens on the Property and the Net Proceeds of Sale of the Property and will be paid the full amount of their allowed secured claims, which includes principal and accrued

2

interest and reasonable attorneys' fees as provided in Section 506(b) through the date of closing of the sale. Likewise, administrative and priority claims will be paid the full amount of their claims from the Net Proceeds of Sale. The unsecured creditors will also be paid shortly after the closing of the sale of the Property. To the extent that the sale of the Property generates at least $2.7 million in Net Sale Proceeds, the unsecured creditors will be paid in full. To the extent any deficiency exists, the unsecured creditors will receive a pro rata share of the net proceeds of sale after the payment of approximately $520,000 in secured and priority claims.

The Plan also provides that the EB-5 Fund will be granted a lien on the Property, subordinated only to the payment of the other claims under the Plan, ordinary course business expenses, the Kameli exit loan, and borrowed money to the extent that it is used to pay real estate taxes and other carrying costs.

# ARTICLE I

## DEFINITIONS AND INTERPRETATION

A.   Definitions.

The following terms used herein shall have the respective meanings defined below:

1.1.   ***Administrative Expense*** means any right to payment constituting a cost or expense of administration of the Case that is Allowed under sections 503(b), 507(a)(l), and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtor's Estate, (b) any actual and necessary costs and expenses of operating the Debtor's business, (c) any indebtedness or obligations incurred or assumed by the Debtor during the Case, (d) any compensation for professional services rendered and reimbursement of expenses incurred, to the extent Allowed by Final Order under section 330 or 503 of the Bankruptcy Code, and (e) cure payments for executory contracts and unexpired leases that are assumed under section 365 of the Bankruptcy Code.

1.2.   ***Affiliate*** (i) with respect to the Debtor, has the meaning set forth in section 101(2) of the Bankruptcy Code, and (ii) with respect to any Person (including, without limitation, the Debtor) means another Person who controls, is controlled by, or is under common control with, such Person.

1.3.   ***Allowed*** means (i) with reference to any Claim, (a) any Claim against the Debtor, which has been listed by the Debtor in its Schedules (as such Schedules may be amended by the Debtor from time to time in

3

accordance with Bankruptcy Rule 1007) as liquidated in amount and not disputed or contingent as to liability and for which no proof of Claim has been filed, (b) any Claim as to which the liability of the Debtor and the amount thereof are determined by a Final Order, or (c) any Claim against the Debtor allowed pursuant to this Plan, and (ii) with reference to any Claim or Administrative Expense, (a) any Claim or Administrative Expense that is the subject of a timely filed proof of Claim or request for payment of an Administrative Expense as to which no objection to allowance or request for estimation has been interposed on or before the applicable period of limitation fixed by Section 7.1 of this Plan or otherwise ordered by the Bankruptcy Court, or as to which any objection or request for estimation has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder, (b) any Claim or Administrative Expense expressly allowed under this Plan, or (c) any Claim or Administrative Expense allowed under section 502, 503, or 1111 of the Bankruptcy Code. Unless otherwise specified in this Plan or ordered by the Bankruptcy Court, "Allowed Claim" or "Allowed Administrative Expense" shall not include interest on such Claim or Administrative Expense from and after the Petition Date.

1.4. ***Assumed Company Indemnities*** shall have the meaning set forth in Section 10.4 hereof.

1.5. ***Bankruptcy Code*** means title 11, United States Code, as amended from time to time, as applicable to the Case.

1.6. ***Bankruptcy Court*** means the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

1.7. ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075, title 28, United States Code, as amended from time to time, as applicable to the Case, and any Local Rules of the Bankruptcy Court.

1.8. ***Business Day*** means any day other than a Saturday, a Sunday, or any other day which is a court or legal holiday observed in the United States of America or the State of Illinois.

1.9. ***Case*** means this case commenced by the Debtor in the Bankruptcy Court on the Petition Date under chapter 11 of the Bankruptcy Code.

1.10. ***Cash*** means "dollars" and cash equivalents of the United States of America.

1.11. ***Claim*** means a "claim" as defined in section 101(5) of the Bankruptcy Code.

1.12. ***Collateral*** means the property that secures a Holder's Allowed Secured Claim.

4

1.13.   ***Company*** means the Debtor, a Florida business corporation.

1.14.   ***Company Indemnities*** means any obligation of the Debtor pursuant to the Debtor's or the Reorganized Debtor's Articles of Incorporation, Bylaws, or under any statute or common law arising at any time before, or after, the Effective Date to indemnify any Person.

1.15.   ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the Case docket.

1.16.   ***Confirmation Hearing*** means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

1.17.   ***Confirmation Order*** means the order or orders of the Bankruptcy Court confirming this Plan.

1.18.   ***Cure*** means the payment of Cash by the Debtor, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to (i) cure a default by the Debtor under an executory contract or unexpired lease of the Debtor and (ii) permit the Debtor to assume such executory contract or unexpired lease under section 365 of the Bankruptcy Code.

1.19.   ***Disbursing Agent*** means the Person designated to serve in such capacity as a disbursing agent under Sections 6.4 hereof, but will be the Debtor's Counsel unless some other entity is designated.

1.20.   ***Disputed*** means a Claim, Equity Interest, or Administrative Expense (a) to the extent neither Allowed nor disallowed under this Plan or a Final Order nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code, or (b) which has been or hereafter is listed by the Debtor on its Schedules as unliquidated, disputed, or contingent, and which has not been resolved by written agreement of the parties or a Final Order, or (c) as to which the Debtor or any other party in interest has interposed a timely objection and/or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order, or (d) which arises in connection with an executory contract which, as of the Confirmation Date, has not yet been assumed by the Debtor, and therefore such contract is deemed rejected pursuant to Section 8.1 of this Plan.

1.21.   ***Disputed General Unsecured Claim Reserve*** means the reserve established pursuant to Section 6.3 of this Plan for Disputed General Unsecured Claims.

1.22.   ***Disputed Secured Claim Reserve*** means the reserve established pursuant to Section 6.2 of this Plan for Disputed Secured Claims.

1.23.  ***Distribution Date*** means the Business Day upon which the Debtor shall have closed on the sale of the Property and the Net Proceeds of Sale are available for distribution as set forth in the Plan.

1.24.  ***Effective Date*** means a Business Day selected by the Debtor, and specified in a notice sent by the Debtor to all parties in interest, on which is the earlier of a date that (a) no stay of the Confirmation Order is in effect and (b) the conditions precedent to the effectiveness of this Plan specified in Section 9.2 of this Plan shall have been satisfied or waived as provided in Section 9.3;

1.25.  ***Equity Interest*** means the common stock , or other equity security or ownership interests in the Debtor, including all rights, interests, and Claims against the Debtor or its respective Affiliates or Representatives (including Claims for fraud, misrepresentation, rescission, reimbursement, contribution, or damages) arising under, or in connection with, or in any way related to (i) all agreements entered into by the Debtor or its respective Affiliates or Representatives in connection with the issuance of such equity security or any related transactions or (ii) the purchase or sale of such equity security or any related transactions.

1.26.  ***Estate*** means the estate of the Debtor created under section 541 of the Bankruptcy Code.

1.27.  ***Estate Causes of Action*** means all claims and causes of action of the Debtor against third parties arising under Chapter 5 of the Bankruptcy Code, or under related federal or state statutes or common law, including fraudulent transfer laws.

1.28.  ***Existing Organizational Documents*** means the Debtor's articles of incorporation, or other charter documents legally forming and/or organizing the Debtor, all as amended and/or restated up to, and in existence as of, the time immediately prior to the Effective Date. Except to the extent amended or restated by the Plan, such Existing Organizational Documents will remain in full force and effect.

1.29.  ***Face Amount*** means either (i) the full stated amount claimed by the Holder of such Claim in any proof of Claim filed by the bar date established by the Bankruptcy Court or otherwise deemed timely filed under applicable law, if the proof of Claim specifies only a liquidated amount; or (ii) if no proof of Claim has been filed by the bar date or has otherwise been deemed timely filed under applicable law or if the proof of Claim specifies an unliquidated amount, the amount of the Claim (a) acknowledged by the Debtor or Reorganized Debtor in any objection to such Claim or in the Schedules as an undisputed, non-contingent and liquidated Claim, (b) estimated by the Bankruptcy Court pursuant to

6

section 502(c) of the Bankruptcy Code, or (c) proposed by the Debtor or established by the Reorganized Debtor following the Effective Date.

1.30. ***Final Maturity Date*** means the fifth anniversary of the Effective Date.

1.31. ***Final Order*** means an order or judgment of a court of competent jurisdiction, which has been entered on the docket maintained by the clerk of such court, and which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or a new trial, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, or rehearing shall have expired; provided, however, that the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

1.32. ***General Unsecured Claim*** means any Claim that arose or accrued prior to the Petition Date that is not an Administrative Expense, Priority Tax Claim, Priority Non-Tax Claim, or Secured Claim, including, without limitation, Claims arising from the rejection of an unexpired lease or executory contract pursuant to this Plan or other Final Order of the Bankruptcy Court, and the Holders of Secured Claims, that are determined not to be have any value pursuant to Section 506(a), except to the extent such Claims are separately classified as Unsecured Claims under the Plan.

1.33. ***General Unsecured Claim Distributions*** means Cash distributed to Holders of General Unsecured Claims under the Plan.

1.34. ***Holder*** means a Person that holds a beneficial interest in a Claim or Equity Interest against the Debtor.

1.35. ***Indemnified Person*** means any person entitled to indemnification by the Debtor or Reorganized Debtor pursuant to the Company Indemnities.

1.36. ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.37. ***Local Rules*** means Local Rules of the United States Bankruptcy Court for the Northern District of Illinois.

1.38. ***Mechanic's Lien*** means the mechanic's lien filed against the Property by Forum Architecture and Interior Design, Inc.

1.39. ***Net Proceeds of Sale*** means the cash proceeds received by the Debtor from the closing of the sale of the Property after credits and prorations due the buyer and the payment of all direct closing costs, including closing attorneys' reasonable fees, title charges, and transfer taxes, if applicable, and any allowed administrative expenses recoverable from the Property pursuant to Section 506(c).

1.40. ***Person*** means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof, or any other form of legal entity.

1.41. ***Petition Date*** means April 7, 2020, the date on which the Debtor commenced its Case.

1.42. ***Plan*** means this Plan of Reorganization, including, without limitation, the exhibits and schedules hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.43. ***Priority Non-Tax Claim*** means any unsecured Claim entitled to priority in payment as specified in section 507(a)(3)-(7) or (a)(9)-(10) of the Bankruptcy Code.

1.44. ***Priority Tax Claim*** means any unsecured Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.45. ***Property*** means the unimproved real property located at 4999 Winkler Avenue, Ft Myers, Florida, Parcel Number 04-45-25-P2-00001.2000.

1.46. ***Ratable Proportion*** means, with reference to any distribution on account of any Allowed Claim in any class or classes, as applicable, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of Allowed Claims (plus Disputed Claims until disallowed) in the same class or classes, as applicable.

1.47. ***Releasee*** means each of (a) the members of the Debtor as of the Effective Date of the Plan or at any time subsequent to the Effective Date of the Plan, and (b) each of their respective Representatives and Affiliates.

1.48. **Reorganized Debtor** means the Debtor, on and after the Effective Date.

1.49. **Representatives** means, with respect to any Person, such Person's present, former or future officers, directors, employees, consultants, members, managers, partners, principals, agents, advisors (including any attorneys, financial advisors, investment bankers, and other professionals retained by such Persons), Affiliates, funds under management, and representatives.

1.50. **Sale Order** means the order authorizing the sale of the Property entered by the Bankruptcy Court.

1.51. **Schedules** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms, as such schedules and statements have been or may be supplemented or amended through the Confirmation Date pursuant to Bankruptcy Rule 1007.

1.52. **Secured Claim** means a Claim secured by a Lien on the Debtor's property, which is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable nonbankruptcy law, but solely to the extent deemed secured by section 506(a) and (b) of the Bankruptcy Code, or a Claim that is subject to setoff under section 553 of the Bankruptcy Code.

1.53. **Secured Claim Cram Down Rate** means the greater of (i) the prime rate, plus one-half percent (.05%), or (ii) the rate determined by the Bankruptcy Court as sufficient to satisfy the standard of Section 1129(b)(2)(A)(i)(II).

1.54. **Tax Code** means the Internal Revenue Code of 1986, as amended.

1.55. **U.S. Trustee** means the United States Trustee appointed under section 581, title 28, United States Code to serve in the Northern District of Illinois.

1.56. **Unsecured Claim Cram Down Rate** means the greater of (i) prime rate plus 5 percent (5%), or (ii) the rate determined by the Bankruptcy Court as sufficient to satisfy the standard of Section 1129(b)(2)(B)(i).

B.     Interpretation; Application of Definitions and Rules of Construction.

Unless otherwise specified, all section, article, schedule or exhibit references in this Plan are to the respective section in, article of, or schedule or exhibit to, this Plan, as the same may be amended, waived or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan and not to any section, subsection, or clause contained in this

9

Plan. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

## ARTICLE II

## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

### 2.1   *Administrative Expenses.*

Except to the extent that a Holder of an Allowed Administrative Expense agrees to a less favorable treatment, and except as provided in this Section 2.1 of this Plan, as soon as reasonably practicable on or after the Effective Date, the Reorganized Debtor shall pay Cash in an amount equal to such Allowed Administrative Expense to each Holder of an Allowed Administrative Expense; *provided, however,* that Allowed Administrative Expenses representing liabilities incurred in the ordinary course of business by the Debtor, shall be assumed and paid by the Reorganized Debtor in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

### 2.2   *Professional Compensation and Reimbursement Claims.*

All Persons seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall (i) file, on or before the deadline specified in any Local Rule or order of the Bankruptcy Court, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (ii) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (A) upon the later of (l) the Distribution Date and (2) the date on which the order that deemed such Administrative Expense Allowed becomes a Final Order or (B) upon such other terms as may be mutually agreed upon by such Holder and the Reorganized Debtor. The Reorganized Debtor is authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course without Bankruptcy Court approval.

### 2.3   *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, commencing as soon as reasonably practicable on or after the Distribution

Date, and continuing over a period not exceeding five (5) years after the Petition Date, Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with simple interest at the Applicable Rate, subject to the sole option of the Debtor or Reorganized Debtor to prepay the entire amount of the Allowed Priority Tax Claim at any time without penalty. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND
## EQUITY INTERESTS, IMPAIRMENT AND VOTING

The categories of Claims and Equity Interests, other than Administrative Expenses and Priority Tax Claims, are classified for all purposes, including voting, confirmation, and distribution pursuant to this Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No |
| Class 2 | Real Estate Tax Secured Claims-Emerald | Impaired | Yes |
| Class 3 | Real Estate Tax Secured Claims-Canal | Impaired | Yes |
| Class 4 | Real Estate Tax Secured Claim-Lee County | Impaired | Yes |
| Class 5 | City of Ft Myers Secured Claim | Impaired | Yes |
| Class 6 | Forum Architecture Secured Claim | Impaired | Yes |
| Class 7 | General Unsecured Claims | Impaired | Yes |
| Class 8 | General Unsecured Claims-Kameli | Impaired | Yes |
| Class 9 | General Unsecured Claims-EB-5 Fund | Impaired | Yes |
| Class 10 | Shareholder Interests | Unimpaired | No |

## ARTICLE IV

## PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS

Claims and Equity Interests shall receive the treatment set forth below.

### 4.1    *Priority Non-Tax Claims (Class 1).*

With respect to any Allowed Priority Non-Tax Claims not paid pursuant to a prior Final Order, as soon as reasonably practicable on or after the Distribution Date or the date that is fourteen (14) days after the date such claim is Allowed, and except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, each Allowed Priority Non-Tax Claim shall be paid in full in cash in accordance with the priorities set forth in section 507 of the Bankruptcy

Code. (All Allowed Priority Non-Tax Claims that are not due and payable on or before the Distribution Date shall be paid in the ordinary course of business.)

### 4.2    *Real Estate Tax Secured Claims-Emerald 2017 (Class 2).*

The Debtor shall pay the Holder of the Class 2 Claims 100% of the amount of its Allowed Secured Claim, together with interest at the statutory rate, from the Net Sale Proceeds on the Distribution Date. The Holder of such Claim shall retain its lien on the Property and proceeds until it is paid in full.

### 4.3    *Real Estate Tax Secured Claims-Canal 2018 (Class 3).*

The Debtor shall pay the Holder of the Class 3 Claims 100% of the amount of its Allowed Secured Claim, together with interest at the statutory rate, from the Net Sale Proceeds on the Distribution Date. The Holder of such Claim shall retain its lien on the Property and proceeds until it is paid in full.

### 4.4    *Real Estate Tax Secured Claims-Lee County 2019 (Class 4).*

The Debtor shall pay the Holder of the Class 4 Claims 100% of the amount of its Allowed Secured Claim, together with interest at the statutory rate, from the Net Sale Proceeds on the Distribution Date. The Holder of such Claim shall retain its lien on the Property and proceeds until it is paid in full.

### 4.5    *City of Ft. Myers Secured Claim (Class 5).*

The Debtor shall pay the Holder of the Class 5 Claims 100% of the amount of its Allowed Secured Claim, together with interest at the statutory rate, from the Net Sale Proceeds on the Distribution Date. The Holders of such Claim shall retain its lien on the Property and proceeds until it is paid in full.

### 4.6    *Forum Architecture Secured Claim (Class 6).*

The Debtor shall pay the Holder of the Class 6 Claim 100% of the amount of its Allowed Secured Claim, together with interest at the Florida judgment rate from the Net Sale Proceeds on the Distribution Date . The Holder of such Claim shall retain its lien on the Property and proceeds until it is paid in full and shall retain the right to credit bid its claim at any sale the does generate sufficient Net Proceeds of Sale to pay its claim in full, subject to the estate's rights, if any, under Section 506(c). Forum shall automatically be deemed a qualified bidder without the need for any deposit at such auction should it occur.

### 4.7    *General Unsecured Claims (Class 7).*

To the extent of any surplus Net Sale Proceeds after payment of secured and administrative and priority claims, the Debtor shall pay Holders of Allowed Class 7

Claims 100% of the amount of the Allowed Unsecured Claim, together with accrued interest thereon at the Unsecured Claim Cram Down Rate, or to the extent of a deficiency in Net Sale Proceeds a Ratable Proportion of such proceeds with the Class 9 Claims. Notwithstanding the treatment afforded the Class 9 Claims, the Class 7 claims shall be entitled to pari passui treatment with the Class 9 Claims,

### 4.8    General Unsecured Claims-Kameli related parties (Class 8).

To the extent of any surplus Net Sale Proceeds after payment of secured and administrative and priority claims, and the Allowed Class 7 and Class 9 Claims, the Debtor shall pay the Holders of the Allowed Class 8 Claims 100% of the amount of the Allowed Unsecured Claim, together with accrued interest thereon at the Unsecured Claim Cram Down Rate, or to the extent of a deficiency in Net Sale Proceeds a Ratable Proportion of such proceeds. The Class 8 Claims are subordinated to the payment of all Administrative, Priority and Secured and Unsecured Claims, but shall be prior in distribution to the Class 10 Interests.

### 4.9    General Unsecured Claims-Ft. Myers EB-5 Fund (Class 9).

To the extent of any surplus Net Sale Proceeds after payment of secured and administrative and priority claims, the Debtor shall pay Holders of Allowed Class 7 Claims 100% of the amount of the Allowed Unsecured Claim, together with accrued interest thereon at the Unsecured Claim Cram Down Rate, or to the extent of a deficiency in Net Sale Proceeds a Ratable Proportion of such proceeds with the Class 7Claims. The Class 9 Claim shall be granted a lien on Property to secure payment of its claim subordinate only to the payment of secured and priority claims under the Plan, the Ratable Proportion of payments to the Class 7 claims, the Kameli Exit Facility, ordinary course of business expense and money borrowed for purposes of paying claims under the Plan or ordinary business expenses and expenses relating to the disposition of the Property.

### 4.10    Stockholder Equity Interests (Class 10).

On the Effective Date, the holders of the Equity Interests shall retain their interests in the Debtor and shall receive distributions proved for under the Existing Organizational Documents, the Plan and applicable nonbankruptcy law.

### 4.11    Confirmation.

Since the Plan does not discriminate unfairly and is fair and equitable with respect to its treatment of all Classes of claims and interests, the Debtor will therefore seek confirmation of the Plan as provided in section 1191 of the Bankruptcy Code.

# ARTICLE V

## MEANS OF IMPLEMENTATION

### 5.1    *Kameli Plan Exit Credit Facility.*

Kameli will loan the Debtor up to $30,000 annually to pay real estate taxes, maintenance and other expenses, until such time as the Debtor closes on the sale of the Property and distributes the Net Proceeds of Sale in accordance with this Plan. The loan shall be secured by a lien junior to all existing liens on the Property, but senior to the lien being granted the Class 9 Claims under the Plan, shall bear interest at the prime rate and shall be payable from the Net Proceeds of Sale at the closing of the Sale of the Property.

### 5.2    *Marketing and Sale of Property.*

Except to the extent inconsistent with the Plan, the Reorganized Debtor shall continue to market Property, for the purpose of generating Net Proceeds of Sale to pay operating expenses of the Debtor and to fund distributions to Holders of Interests. The Debtor sale of the Property shall be deemed authorized by this plan and shall be free and clear of all interests in the Property all such interest attaching to the proceeds of sale. To the extent the holder of any Allowed Secured Claim, secured by the Property, seeks to bid at the sale of the Property, such creditor right to credit bid, to the extent such right exists, is preserved.

If the Debtor has not closed on a sale of the Property by January 31, 2021, unless such date is extended by order of the Court, the Debtor shall offer the Property for sale to the highest bidder at an auction which shall occur by no later than March 31, 2021. To be qualified to bid at the auction, a bidder must provide a bid that has no contingencies, a deposit equal to 10% of the purchase price with Debtor's counsel prior to making such bid, be open and irrevocable, and must close on the later of the sale order (sought below) becoming final and non-appealable or June 30, 2021 which shall be known as the Distribution Date. The Debtor shall retain the highest bidder 's deposit after the auction

Upon receipt of an agreement for sale or a successful or highest bid at auction that meet the above conditions, the Debtor shall promptly file a motion for the entry of an order authorizing the sale of Property free and clear of all interests in the Property, with all claims based on such interests attaching to the proceeds of sale in the same order of priority as of the Petition Date.

Upon the Court's approval of the sale, the Debtor will immediately proceed to closing and distribute the Net Sale Proceeds in accordance with the Plan upon the Distribution Date.

### 5.3    *Legal Form and Governance.*

(a) Articles and Bylaws. The Debtor shall be deemed to have assumed the Debtor's Existing Organizational Documents effective as of the Effective Date. On the Effective Date, or as soon thereafter as practicable, the Debtor shall file any applicable reports as required, with the appropriate Persons in the applicable jurisdiction of organization to maintain the Debtor in good standing. Except to the extent amended or restated by this Plan, the Debtor's Existing Organizational Documents will remain in full force and effect after the Effective Date.

(b)    Management of the Reorganized Debtor. On the Effective Date, the operation of the Reorganized Debtor shall become the general responsibility of the Directors, subject to, and in accordance with, its Articles of Incorporation and Bylaws. The initial Director and Officer of the Reorganized Debtor is Taher Kameli.

### 5.4    *Exemption from Transfer Taxes*.

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of equity securities under or in connection with this Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, and any deeds, bills of sale, or assignments executed in connection with the sale pursuant to this Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 5.5    *Expedited Tax Determination.*

The Debtor and the Reorganized Debtor may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtor for any and all taxable periods (or portions thereof) ending before or after the Petition Date through, and including, the Effective Date.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

### 6.1    *Date of Distributions*.

Unless otherwise provided herein, any distributions to be made hereunder shall be made on the Distribution Date, or as soon as practicable thereafter and deemed made on the Distribution Date. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed

on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

### 6.2    *Distribution Concerning Disputed Secured Claims.*

(a)    Disputed Secured Claim Reserve. From and after the Effective Date, all Cash to be distributed on account of any Disputed Secured Claims, when and if such Disputed Secured Claims become Allowed, (a) will be maintained by and in the name of the Disbursing Agent in the Disputed Secured Claim Reserve, and will be held in trust pending distribution by the Disbursing Agent for the benefit of the Holders of such Claims and, to the extent that all Disputed Secured Claims are not Allowed in full, such Cash shall be returned to the Reorganized Debtor for distribution in accordance with this Plan, (b) will be accounted for separately and (c) will not constitute property of the Reorganized Debtor except as provided in this Plan.

(b)    Reserved Amount. The amount of Cash to be deposited in the Disputed Secured Claim Reserve shall be calculated as if each Disputed Secured Claim were an Allowed Claim in its Face Amount, such that the reserved amount shall include the Cash that such Holder of such Disputed Secured Claim would have received if such Claim were Allowed at its Face Amount as provided for in the Sale Order, or any other agreement or order relating to the amount of a particular Disputed Secured Claim Reserve.

(c)    Recourse. Each Holder of a Disputed Secured Claim will have recourse only to the undistributed Cash held in the Disputed Secured Claim Reserve for satisfaction of the distributions to which Holders of Disputed Secured Claims are entitled under this Plan, and not to the Reorganized Debtor, its property or any assets previously distributed on account of any Allowed Claim.

### 6.3    *Distributions Concerning Disputed General Unsecured Claims.*

(a)    Disputed General Unsecured Claims Reserve. From and after the Effective Date, all Cash to be distributed on account of any Disputed General Unsecured Claims, when and if such Disputed General Unsecured Claims become Allowed, (a) will be maintained by and in the name of the Disbursing Agent in the Disputed General Unsecured Claim Reserve, and will be held in trust pending distribution by the Disbursing Agent for the benefit of the Holders of such Claims and, to the extent that all Disputed General Unsecured Claims are not Allowed in full, for the benefit of Holders of Allowed General Unsecured Claims in accordance with Section 7.3 of this Plan, (b) will be accounted for separately and (c) will not constitute property of the Reorganized Debtor except as provided in Section 7.3 of this Plan.

(b)      Reserved Amount. The amount of Cash to be deposited in the Disputed General Unsecured Claim Reserve shall be calculated as if each Disputed General Unsecured Claim were an Allowed Claim in its Face Amount multiplied by 150%.

(c)      Recourse. Each Holder of a Disputed General Unsecured Claim will have recourse only to the undistributed Cash held in the Disputed General Unsecured Claim Reserve for satisfaction of the distributions to which Holders of Disputed General Unsecured Claims are entitled under this Plan, and not to the Reorganized Debtor, its property or any assets previously distributed on account of any Allowed Claim.

### 6.4     *Disbursing Agent.*

All distributions under this Plan shall be made by the Disbursing Agent or such other entity designated by the Debtor as a Disbursing Agent on the Effective Date, which Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.

### 6.5     *Rights and Powers of Disbursing Agent.*

(a)      Powers of the Disbursing Agent. The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (ii) make all distributions contemplated hereby, , and (iii) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(b)      Expenses Incurred on or After the Effective Date. Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement claims (including, without limitation, reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtor.

### 6.6     *Delivery of Distributions.*

Record Address. Subject to Bankruptcy Rule 9010, all distributions to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor or its agents, as applicable, unless the Debtor or Reorganized Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a proof of Claim or interest by such Holder that contains an address for such Holder different from the address reflected for such Holder on the Schedules. In the event that any distribution to any Holder is returned as undeliverable, the Disbursing Agent shall use commercially reasonable efforts to determine the

current address of such Holder, but no distribution to such Holder shall be made
unless and until the Disbursing Agent has determined the then-current address of
such Holder, at which time such distribution shall be made to such Holder without
interest; provided that such distributions shall be deemed unclaimed property
under section 347(b) of the Bankruptcy Code at the expiration of the later of one
year from the Effective Date or 6 months after such Claim is Allowed. After such
date, all unclaimed property or interest in property shall revert to Reorganized
Debtor, and the Claim of any other Holder to such property or interest in property
shall be discharged and forever barred.

### 6.7    *Manner of Payment.*

At the option of the Disbursing Agent, any Cash payment to be made
hereunder may be made by a check or wire transfer or as otherwise required or
provided in applicable agreements. All distributions of Cash to the creditors of the
Debtor under this Plan shall be made by, or on behalf of, the Debtor.

### 6.8    *Setoffs and Recoupment.*

The Debtor may, but shall not be required to, set off against, or recoup from,
any Claim and the payments to be made pursuant to this Plan in respect of such
Claim, any claims of any nature whatsoever that the Debtor may have against the
claimant, but neither the failure to do so nor the allowance of any Claim hereunder
shall constitute a waiver or release by the Debtor or Reorganized Debtor of any such
claim it may have against such claimant.

### 6.9    *Allocation of Plan Distributions Between Principal and Interest.*

Except as otherwise provided herein, to the extent that any Allowed Claim
entitled to a distribution under this Plan consists of indebtedness and accrued but
unpaid interest thereon, such distribution shall be allocated first to the principal
amount of the Claim (as determined for federal income tax purposes) and then, to
the extent the consideration exceeds the principal amount of the Claim, to accrued
but unpaid interest.

### 6.10   *Withholding and Reporting Requirements.*

In connection with the Plan and all distributions hereunder, the Disbursing
Agent shall, to the extent applicable, comply with all tax withholding and reporting
requirements imposed by any federal, state, provincial, local, or foreign taxing
authority and all distributions hereunder shall be subject to any such withholding
and reporting requirements. The Disbursing Agent shall be authorized to take any
and all actions that may be necessary or appropriate to comply with such
withholding and reporting requirements. Notwithstanding any other provision of
the Plan, (a) each Holder of an Allowed Claim that is to receive a distribution

pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Disbursing Agent for the payment and satisfaction of such withholding tax obligations. Any property to be distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution pursuant to Section 6.5(a) of the Plan.

## ARTICLE VII

## PROCEDURES FOR TREATING DISPUTED
## CLAIMS UNDER PLAN OF REORGANIZATION

### *7.1*    *Objections.*

Except as otherwise provided herein, as of the Effective Date, objections to, and requests for estimation of, Claims may be filed and prosecuted by the Debtor or Reorganized Debtor, or such other party in interest as may be appointed by the Bankruptcy Court. Such objections and requests for estimation shall be served on the respective claimant and filed with the Bankruptcy Court on or before the latest of (a) any deadline established by Order of the Bankruptcy Court, (b) the later of one-hundred eighty (180) days after the deadline for the filing of a proof of Claim with the Bankruptcy Court, (c) sixty (60) days after an application for allowance of an Administrative Expense has been filed with the Bankruptcy Court in the Case, or (d) with respect to certain Claims identified prior to the Confirmation Date by the Debtor, such other date as may be fixed by the Bankruptcy Court. Notwithstanding the foregoing, the deadline to object to any Claims in Classes 1-6 Class shall be no later than December 1, 2020.

### *7.2*    *No Distributions Pending Allowance.*

Notwithstanding any other provision hereof, if any portion of a Claim is Disputed, no payment or distribution provided hereunder shall be made on account of the disputed portion of such Claim unless and until such Disputed Claim becomes Allowed. In lieu of distributions under this Plan to Holders of Disputed Secured Claims and Disputed General Unsecured Claims, the Disputed Claim Reserves will be established on the Effective Date to hold property for the benefit of these Claim Holders.

### *7.3*    *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as practicable after the date of

a Final Order allowing any Disputed Claim, the Disbursing Agent shall provide to the Holder of such Claim the distribution to which such Holder is entitled under this Plan. Any amounts that remain in any the Disputed General Unsecured Claim Reserve following resolution and payment of all Disputed General Unsecured Claims shall be distributed to the Reorganized Debtor.

# ARTICLE VIII

# EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## 8.1    *Treatment.*

Except as otherwise provided herein, including in Section 10.4 (Indemnification Obligations), in the Confirmation Order or in any contract, instrument, release, indenture, or other agreement, or document entered into in connection with this Plan, as of the Effective Date the Debtor shall be deemed to have rejected each pre-petition executory contract and unexpired lease to which it is a party, unless such contract or lease (a) was previously assumed or rejected by the Debtor, (b) previously expired or terminated pursuant to its own terms, (c) is the subject of a motion to assume filed on or before the Confirmation Date, or (d) is described in this Plan, as an executory contract or unexpired lease to be assumed. The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions or rejections described above, as of the Effective Date.

## 8.2    *Lease Agreements.*

Except and to the extent previously assumed pursuant to an order of the Bankruptcy Court entered on or before the Confirmation Date, all unexpired Lease Agreements relating to the Property, deemed executory contracts assumable by the Debtor pursuant to section 365(a) of the Bankruptcy Code, shall be deemed rejected pursuant to the Confirmation Order.

## 8.3    *Cure Payments.*

Any monetary amounts by which any executory contract or unexpired lease to be assumed hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtor. If there is a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of the Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

20

*8.4*     ***Rejection Damages Claims.***

Proofs of all Claims arising out of the rejection of executory contracts and unexpired leases pursuant to this Plan shall be filed with the Bankruptcy Court, claim, and served upon the Debtor and its counsel not later than thirty (30) days after the earlier of (a) the date on which notice of the occurrence of the Effective Date has been served and (b) the date of entry of an order of the Bankruptcy Court approving such rejection. Any Claims not filed within such time shall be forever barred from being asserted against the Debtor, its Estate, the Reorganized Debtor, and their respective properties and interests.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONSUMMATION DATE

*9.1*     ***Conditions Precedent to Confirmation.***

The Plan shall not be confirmed unless and until the following conditions have been satisfied or waived: (a) the Confirmation Order has been entered on the docket by the Clerk of the Bankruptcy Court; and (b) the form of the Plan, Plan Addendum, and the Confirmation Order have been approved by the Debtor.

*9.2*     ***Conditions Precedent to Effectiveness.***

The Effective Date shall not occur, and this Plan shall not become effective unless and until the following conditions are satisfied in full or waived in accordance with Article IX of this Plan:

(a)     The Confirmation Order becomes a Final Order.

(b)     All actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of this Plan, including those actions identified in Article V of this Plan, are affected or executed and delivered, as applicable; and

(c) All authorizations, consents, and regulatory approvals, if any, required by the Debtor in connection with the consummation of this Plan are obtained and not revoked.

9.3     ***Waiver of Conditions.***

Each of the conditions precedent in Section 9.2 hereof may be waived, in whole or in part by the Debtor.

### 9.4    *Satisfaction or Failure of Conditions.*

Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. If the Debtor determines that one of the conditions precedent set forth in Section 9.2 hereof cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Debtor shall file a notice that the Plan has not become effective with the Bankruptcy Court and the Confirmation Order may be vacated by the Bankruptcy Court. If the Confirmation Order is vacated pursuant to this Section, this Plan shall be null and void in all respects, and nothing contained in this Plan shall constitute a waiver or release of any Claims against the Debtor or the allowance of any Claim as an Allowed Claim.

## ARTICLE X

## EFFECT OF CONFIRMATION

### 10.1    *Binding Effect.*

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan shall bind any Holder of a Claim against, or Equity Interest in, the Debtor and such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is impaired under this Plan, whether or not such Holder has accepted this Plan, and whether or not such Holder is entitled to a distribution under this Plan.

### 10.2    *Discharge of Debtor.*

To the full extent provided for in Section 1192 of the Bankruptcy Code, and except as otherwise provided herein or in the Confirmation Order, upon the distribution of the Net Proceeds of Sale, all Claims against and Equity Interests in the Debtor shall be satisfied, discharged and released in full exchange for the consideration, if any, provided hereunder. Except as otherwise provided herein or in the Confirmation Order, all Persons shall be precluded from asserting against the Debtor or the Reorganized Debtor or its properties or interests in property including the Property, any other Claims based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

### 10.3    *Term of Injunctions or Stays.*

[Intentionally Deleted]

### 10.4    *Indemnification Obligations.*

The Debtor's obligations under the Company Indemnities to indemnify any Indemnified Person with respect to Claims arising prior to the Effective Date is intended to provide indemnification to Person to the extent of their rights of indemnification under Florida or other applicable non-bankruptcy law. .

### 10.5    *Retained Causes of Action.*

Effective as of the Effective Date, Estate Causes of Action, including all preference or other avoidance action claims and actions of the Debtor, including, but not limited to, those arising under chapter 5 of the Bankruptcy Code, and any causes of action under applicable non-bankruptcy law shall be retained by the Reorganized Debtor.

### 10.6    *Remedies to Creditors in Event of Default.*

If the Debtor fails to timely comply with the provisions of this Plan, any creditor may serve a notice of default on Debtor's counsel outlining the specific default and giving a five (5) day period to cure. If the Debtor fails to timely cure the specified default, Creditor may seek relief from this Court including conversion of the case, dismissal or relief from stay. The Bankruptcy Court expressly reserves jurisdiction to enforce this Plan as provided in Article XI.

## ARTICLE XI

## RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters, except as expressly noted herein, arising out of, or related to, the Case and this Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)    To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims including any Administrative Expenses resulting therefrom;

(b)    To determine any and all adversary proceedings, applications, and contested matters that are pending on the Effective Date;

(c)    To ensure that distributions to Holders of Allowed Administrative Expenses and Allowed Claims are accomplished as provided herein;

(d)    To hear and determine any timely objections to, requests for estimation of, or requests for reconsideration of the allowance of, Administrative Expenses or proofs of claims, including, without limitation, any objections to the classification of any Administrative Expense, Claim or Equity Interest, and to allow

or disallow any Disputed Administrative Expense or Disputed Claim, in whole or in part;

(e)   To resolve disputes as to the ownership of any Administrative Expense, Claim or Equity Interest;

(f)   To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(g)   To issue such orders in aid of execution of this Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(h)   To consider any amendments to or modifications of this Plan, or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)   To hear and determine all applications of retained professionals under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(j)   To hear and determine disputes or issues arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby, including authorizing the sale of the Property pursuant to Article V, any agreement, instrument, or other document governing or relating to any of the foregoing, or any settlement approved by the Bankruptcy Court;

(k)   To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtor prior to the Effective Date, or request by the Reorganized Debtor after the Effective Date, for an expedited determination of tax under section 505(b) of the Bankruptcy Code);

(l)   To hear any other matter not inconsistent with the Bankruptcy Code;

(m)   To hear and determine all disputes involving the existence, scope, and nature of the discharges, releases and injunctions granted under this Plan, the Confirmation Order, or the Bankruptcy Code;

(n)   To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any Person with the consummation or implementation of this Plan;

(o)   To enter a final decree closing the Case; and

(p)   To hear any claim, matter or chose in action, whether it has been commenced prior to the Effective Date, that the Debtor or Reorganized Debtor

24

may prosecute, including any Estate Causes of Action which has not been liquidated prior to the Effective Date.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

### 12.1    *Payment of Statutory Fees*.

[Intentionally deleted].

### 12.2    *Modification of Plan*.

The Plan may be modified by the Debtor, in accordance with section 1193 of the Bankruptcy Code.

### 12.3    *Withdrawal of Plan.*

The Debtor reserves the right at any time prior to the entry of the Confirmation Order, to withdraw this Plan.

### 12.4    *Severability of Plan Provisions.*

In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.

Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

### 12.5    *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to this Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida without giving effect to the principles of conflict of laws.

### 12.6    *Compliance with Tax Requirements.*

In connection with the consummation of this Plan, any party issuing any instrument or making any distribution under this Plan, including any party described in Section 6.2 above, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under this Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under this Plan has the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

### 12.7    *Computation of Time.*

In computing any period prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### 12.8    *Notices.*

All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Paul M. Bauch, Esq.
> BAUCH & MICHAELS, LLC
> 53 W. Jackson Boulevard, Suite 1115
> Chicago, Illinois 60604
> Tel: (312) 588-5000
> Fax: (312) 427-5709
> pbauch@bauch-michaels.com

### 12.9    *Filing or Execution of Additional Documents.*

On or before the Effective Date, and without the need for any further order or authority, the Debtor or Reorganized Debtor shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to the Debtor or Reorganized Debtor as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

Dated: October 4, 2020                    FT Myers ALF, Inc.

                                          By:/s/ Paul M. Bauch_____

Paul M. Bauch (ARDC #6196619)
Carolina Y. Sales (ARDC #6287277)
Bauch & Michaels, LLC
53 W. Jackson Boulevard, Suite 1115
Chicago, Illinois 60604
Tel.: (312) 588-5000
pbauch@bauch-michaels.com